IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 5:95-CR-70074-3 |
| v. | ) | |
| | ) | |
| JOHN WALLER, | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Defendant John Waller, represented by counsel, filed a motion to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-015. ECF No. 391. He asks that his sentence be reduced from 320 months to time served. In the alternative, Waller asks the court to grant him compassionate release because his underlying medical conditions make him vulnerable to COVID-19 while he is incarcerated in the Bureau of Prisons. The government does not contest that Waller is eligible for consideration of a reduction of his sentence but argues that the court should decline to exercise its discretion to reduce his sentence because of the nature of Waller's offenses, because he has been convicted of assault with a dangerous weapon while incarcerated, and because he has had other disciplinary infractions while incarcerated. Resp., ECF No. 399. Having considered the arguments of the parties, the court will **DENY** Waller's First Step Act motion and his request for compassionate release.

## BACKGROUND

On December 4, 1995, Waller entered into a plea agreement in which he pled guilty to three counts of the superseding indictment filed in his case: drug conspiracy in violation of 21 U.S.C. § 846 (Count 1); aiding and abetting in a murder during and in relation to a drug

trafficking crime, in violation of 18 U.S.C. § 924(c) and (i) (Count 2); and drug related murder conspiracy in violation of 18 U.S.C. § 371 (Count 3). In exchange for his guilty plea, the government agreed to not seek the death penalty and also agreed to make the court aware that he provided substantial assistance to the government. Plea Agreement, ECF No. 65.

When Waller was sentenced in 1997, the statutory sentencing range for Count 1 was ten years to life pursuant to 21 U.S.C. § 841(b)(1)(A); the statutory sentencing range for Count 2 was any term of years or for life, to be served consecutively to any other term of imprisonment to be imposed, pursuant to 18 U.S.C. § 924(i)(1); and the maximum term of imprisonment for Count 3 was 5 years, pursuant to 21 U.S.C. § 371. Presentence Investigation Report (PSR) ¶ 61, ECF No. 354 at 12. Waller had a base offense level of 43, based on U.S.S.G. § 2D1.1(d)(1), which provides that if a person is killed under circumstances that would constitute murder under 18 U.S.C. § 1111, the first degree murder guideline in § 2A1.1 is used. He received 2 additional points for a victim-related adjustment because he bought duct tape to bind the victim, and a 3-level decrease for acceptance of responsibility, giving him a total offense level of 42. His offense level combined with his criminal history category of VI gave Waller a sentencing range under the guidelines of 360 months to life. U.S.S.G. Ch. 5, Part A. Count 2 required an additional mandatory consecutive sentence of any term of years or life to be imposed. PSR ¶ 62, ECF No. 354 at 13.

On October 31, 1997, Waller was sentenced to 320 months on Count 1, 120 months on Count 2, and 60 months on Count 3, all to run concurrently with one another. J., ECF No. 252 at 2. Waller filed a direct appeal and his conviction was affirmed by the Fourth Circuit

2

Court of Appeals on August 4, 1998. He sought a writ of certiorari which was denied on November 14, 2002.

In March 2010, Waller was involved in an altercation in which he stabbed another inmate with a homemade sharpened weapon. He was indicted on one count of assault with a dangerous weapon with intent to do bodily harm. United States v. Waller, 1:12-CR-00322 (W.D. La. Filed Nov. 28, 2012). He was tried by a jury and found guilty on November 17, 2013. Id., ECF No. 92. On December 19, 2013, the court sentenced Waller to 80 months imprisonment, to be served consecutively to his sentence he is serving in the instant case. Id., ECF No. 95.

Waller has served approximately 289 months and his projected release date is March 19, 2025.

## ANALYSIS

### I. The First Step Act

The First Step Act is a remedial statute "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176-177 (4th Cir. 2019). Prior to passage of the Fair Sentencing Act, a drug trafficker dealing in crack cocaine was subject to the same sentence as a trafficker dealing 100 times more powder cocaine. Kimbrough v. United States, 552 U.S. 85, 91 (2007). The sentencing scheme had a racially disparate impact that resulted in excessive and unwarranted punishments that disproportionately fell on defendants of color. Wirsing, 943 F.3d at 177-78 (internal citations omitted). The Fair

3

Sentencing Act reduced the crack-to-powder ratio to 18-to-1 and eliminated the mandatory minimum sentence for simple possession of crack. Id. at 178.

The Fair Sentencing Act did not apply retroactively to defendants who were sentenced before its passage on August 3, 2010, unless they could bring a motion under the narrow exception provided in 18 U.S.C. § 3582(c)(2). Id. at 178-79 (citing United States v. Black, 737 F.3d 280, 282, 286-87 (4th Cir. 2013)). After passage of the Fair Sentencing Act, the United States Sentencing Commission amended the guidelines to lower the base offense levels assigned to some drugs (Amendments 750 and 782) and provided that the amendments applied retroactively. Id. at 179 (citations omitted). The amendments allowed some defendants sentenced before August 3, 2010 to seek relief, not directly under the Fair Sentencing Act, but by means of a § 3582(c)(2) motion related to one of the amendments. Nevertheless, a reduction under § 3582(c)(2) only applied if the amendments had the effect of lowering the defendant's applicable guideline range. Id. The amendments did not operate to lower the sentences for defendants convicted of very large quantities of crack, or those whose sentences were driven not by the quantity of drugs involved, but by their status as a career offender. Id.

The First Step Act allows defendants sentenced prior to August 3, 2010, and who were ineligible for relief under the guideline amendments, to seek a reduction in their sentences as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. First Step Act § 404(b), 132 Stat. at 5222. A "covered offense" is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010."

4

Id. at § 404(a), 132 Stat. at 5222. Courts have discretion to lower or not lower a sentence even when a defendant is eligible for a sentence reduction. Id. at 404(c), 132 Stat. at 5222.

In United States v. Collington, 995 F.3d 347 (4th Cir. 2021), the court discussed the interplay between section 404 of the First Step Act and 18 U.S.C. § 3582(c). The court explained that while sentence modifications under § 3582(c)(2) are limited in scope and allow defendants to receive only the benefit of a guidelines amendment, modifications under the First Step Act are brought under § 3582(c)(1)(B), which allows courts to "impose" a new sentence. Collington, 995 F.3d at 353-354. The court had previously held that when imposing a sentence under section 404 of the First Step Act, the court must recalculate the guidelines sentence and correct any guidelines error. United States v. Chambers, 956 F.3d 667, 668, 672-74 (4th Cir. 2020).

> Accordingly, we both allow and require more of a sentencing judge in the First Step Act context than the § 3582(c)(2) context. First, district courts must accurately recalculate the Guidelines sentence range. Compare Chambers, 956 F.3d at 672, with [Dillon v. United States, 560 U.S. at 817, 821, 130 S.Ct. 2683 (2010)] (holding that a district court may only "substitute the amended Guideline range" in § 3582(c)(2) proceedings). Second, and relatedly, district courts must correct original Guidelines errors and apply intervening case law made retroactive to the original sentence. Compare Chambers, 956 F.3d at 672–74, with Dillon, 560 U.S. at 831, 130 S.Ct. 2683 (holding that district courts lack the discretion to correct errors unaffected by a Guidelines amendment). Third, the court must consider the § 3553(a) factors to determine what sentence is appropriate. See Chambers, 956 F.3d at 674. Unlike sentence modification proceedings under § 3582(c)(2)—which limit use of the § 3553(a) factors to determining simply whether to reduce a sentence to within a predetermined range—we permit courts to use the § 3553(a) factors to more comprehensively shape sentencing decisions and even depart downward from the new Guidelines range. Compare id., with Dillon, 560 U.S. at 830, 130 S.Ct. 2683.

Collington, 995 F.3d at 355 (emphasis in original).

5

The court clarified that although defendants are not entitled to plenary resentencings under the First Step Act, courts should make a holistic resentencing determination, considering the 18 U.S.C. § 3553(a) factors "to make substantially more robust resentencing decisions than in § 3582(c)(2) proceedings." Collington, 995 F.3d at 356. Also, while courts have discretion in granting relief under the First Step Act, a court abuses its discretion if it leaves in place a sentence that exceeds the statutory maximum established by the Fair Sentencing Act. Id. In addition, when a court exercises its discretion, First Step Act resentencing decisions must be procedurally and substantively reasonable. Id. at 358.

To determine the sentence that would have been imposed had the Fair Sentencing Act been in effect, the court engages in a brief analysis that involves recalculating the sentencing guidelines in light of intervening case law and conducts a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a). In conducting the § 3553(a) analysis, the court may take into account the defendant's conduct after sentencing. United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021).

> [T]he analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors. Rather, the scope of the analysis is defined by the gaps left from the original sentence to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

Id.

Waller was convicted of one count involving cocaine base, and the government concedes that he is eligible for a reduction to his sentence under the First Step Act. The court

6

agrees and finds that Waller is eligible for relief under the First Step Act. See United States v. Gravatt, 953 F.3d 258, 262 (4th Cir. 2020) (quoting United States v. Wirsing, 943 F.3d 175, 180 (4th Cir. 2019) ("[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act.").

## II. Available Relief

Having found that Waller is eligible for relief, the court must now consider what relief, if any, should be granted. At the time Waller was sentenced, a violation of 21 U.S.C. § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment if the offense involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (1996). An offense involving less than 5 grams of cocaine base had a penalty range of 0 to 20 years. 21 U.S.C. § 841(b)(1)(C) (2006). After passage of the Fair Sentencing Act, made retroactive by the First Step Act, in order to trigger the 10-years-to-life sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base. Offenses involving less than 28 grams of cocaine base are subject to sentences of 0-to-20 years.

Count 1 charged Waller with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 841. No amount of cocaine base was alleged in the indictment, but the Presentence Report "identified that at least one-half kilogram was distributed

7

throughout this conspiracy." PSR ¶ 13, ECF No. 354 at 5. Under the First Step Act, "a defendant cannot be resentenced under a statute carrying a mandatory minimum sentence when he or she was not indicted for any particular drug quantity and the jury was never required to make a finding that that would support the application of a mandatory minimum." Jones v. United States, 431 F.Supp.3d 740, 751 (E.D. Va. 2020). "In such situations, defendants must be resentenced for an unspecified drug quantity pursuant to § 841(b)(1)(C) . . . which carries a maximum sentencing range of 20 years." United States v. Alomia-Torres, No. 3:97-cv-00040-FDW, 2021 WL 5456988, at *4 (W.D.N.C. Nov. 22, 2021).[1]

Typically, the court would assess the factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence within the statutory framework. However, because Waller has served more than 20 years, the court reduces his sentence on Count 1 to 20 years, the statutory maximum. See Collington, 995 F.3d at 358 (finding district court erred by sentencing defendant to a term longer than the statutory maximum under the Fair Sentencing Act). The government argues that the First Step Act was not intended to grant reductions to violent offenders and that in addition to Waller's cocaine base conviction, he was convicted of an offense involving murder. However, in light of Collington, the court is required to reduce the sentence on Count 1 to 20 years. Accordingly, Waller's sentence on Count 1 is reduced to 20 years.

---

[1] See also Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013). Read together, these cases establish that the drug weight is an element of the offense and any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt.

8

## III. Sentencing Package Doctrine

Waller's sentence on Count 3 was 60 months, the statutory maximum, and Counts 1 and 3 were grouped for sentencing pursuant to U.S.S.G. § 3D1.2(b). PSR, ECF No. 354 ¶ 26. Thus, no change can be made to Count 3. His sentence on Count 2 was 120 months, but the court could have imposed as sentence as high as life imprisonment. The court shares the government's concern about the nature of Waller's original offense and the fact that he has been convicted of an assault while in prison. Thus, the court will examine his sentence on Count 2 in the context of the sentencing package doctrine.

"Under the sentencing package doctrine, when a district court reconsiders a sentence for one count, it can reconsider sentences for other counts." United States v. Sellers, Cr. No 5:08-944, 2021 WL 2550549, *5 (D.S.C. June 21, 2021) (quoting United States v. Hill, Cr. No. JKB-96-00399, 2020 WL 891009, at *4 (D. Md. Feb. 24, 2020) and citing United States v. Ventura, 864 F.3d 301, 309 (4th Cir. 2017)). "The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses." Ventura, 864 F.3d at 309.

> We agree with our sister circuits that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and that if some counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan." United States v. Townsend, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted).

Id. The Fourth Circuit has not addressed whether the sentencing package doctrine applies

9

when a sentence is modified under the First Step Act, but several district courts have assumed it does. See United States v. Martin, No. RDB-04-0029, 2021 WL 3172278, at *2 (D. Md. July 27, 2021); Sellers, 2021 WL 2550549 at *5; Hill, 2020 WL 891009, at *4.[2]

The court will apply the sentencing package doctrine to Waller's sentence. In accordance with Lancaster, 997 F.3d at 175 and Collington, 995 F.3d at 355, the court will recalculate the sentencing guidelines in light of intervening case law before considering the § 3553 factors.

Waller's guidelines sentencing range remains 360 months to life, because the first degree murder sentencing guideline still applies to him, giving him a base offense level of 43. U.S.S.G § 2D1.1(d)(1) and § 2A1.1. The same two-level enhancement and 3-level reduction apply, making his total offense level 42. His criminal history was categorized as a VI and together with his offense range of 42, rendered a guidelines sentence of 360 months. Waller provided information to the government and the sentencing court took that into account to arrive at the sentence of 320 months. The court will start by considering modification of the sentence on Count 2 to 320 months and then apply the 18 U.S.C. § 3553(a) factors.

The factors include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

---

[2] The Eleventh Circuit Court of Appeals has held in three unpublished decisions that the Sentencing Package Doctrine does not apply in First Step Act cases. See United States v. Thompson, 846 F. App'x 816 (11th Cir. 2021); United States v. Baptiste, 834 F. App'x 547 (11th Cir. 2020); United States v. Pubien, 805 F. App'x 727. No other authority on this issue was found.

10

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

18 U.S.C.A. § 3553(a).

Turning first to the nature and circumstances of the offense, Waller was involved in an extensive drug distribution conspiracy that brought crack cocaine from New York City to Waynesboro, Virginia. When relationships within the enterprise soured over accusations of drug theft and non-payment of drug proceeds, Waller agreed to accompany his co-defendant Gregory Milton to rob Ian Byron-Cox, another member of the conspiracy. Waller bought the duct tape with which Byron-Cox was bound while the codefendants searched his house. Waller testified that he was outside the house when Milton shot Byron-Cox to death. Although Waller

11

did not pull the trigger, he willingly participated in the robbery and the heinous nature and circumstances of the offense weigh against reducing the sentence below 320 months.

Looking next at the history and characteristics of the defendant, Waller was 23 years old at the time he committed the offense. As a juvenile he had several convictions for criminal possession of a controlled substance and as an adult he had a conviction for reckless endangerment and attempted criminal possession of a controlled substance after he drove a stolen vehicle in high speech chase with police. PSR, ECF No. 354 ¶¶ 39-47. It is presumed that the sentencing court took Waller's history and characteristics into account at sentencing and this court does not find a reason to reduce the sentence of 320 months based on Waller's behavior as a juvenile and young adult.

Waller is now 48 years old and has spent the last 24 years in prison. Since being in prison, Waller has had a number of disciplinary infractions, many of which were for possession of a dangerous weapon. Because Waller testified against his codefendant Milton, he asserts that he is in danger from other inmates because he has been labeled a "snitch," and feels the need to protect himself. In the 2010 incident that resulted in Waller being convicted of assault with a dangerous weapon with intent to do bodily harm, Waller stabbed another inmate. Waller argued at sentencing that he felt threatened by the other inmate and the court acknowledged Waller's "fear, potential fear, and the discomfort that undoubtedly came with the fear that if he were revealed to be a snitch, it would mean some other kind of dire consequence." Sentencing Tr. in United States v. Waller, Criminal Action No. 12-00322-01 (located herein at

12

ECF No. 391-2 at 19-20). Nevertheless, the court finds that Waller's disciplinary record while incarcerated weighs against reducing his sentence below 320 months.

However, while incarcerated, Waller has taken advantage of prison programming and has completed 4,300 hours of educational and rehabilitative classes. He has spent many hours studying for his GED and taken other classes on life skills, career building and personal finances. Education Tr., ECF No. 391-6; Program Certificates, ECF No. 391-4. In addition, Waller has maintained a relationship with his sister and his daughter, who are his only surviving family members. Waller has been incarcerated for his daughter's entire life, but he has made an effort to be a father figure for her and she welcomes him back into her life. Waller's efforts at improving himself and his efforts to maintain a relationship with his daughter weigh in favor of his sentence being reduced below 320 months.

Turning to the next two factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, the court finds that the original sentence of 320 months fulfills those goals.

Regarding the next two factors, the court finds that Waller's age indicates that he is unlikely to commit further crimes. In addition, if released he will serve a term of supervised release and will have to report to a United States Probation Officer, which will offer further incentive for Waller to refrain from criminal conduct. As Waller has served 24 years, the court does not find that serving the remainder of his sentence will provide him with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Regarding the need to avoid sentencing disparities, the court notes that Waller's co-defendant, Gregory Milton, continues to serve a life sentence for his role in the conspiracy. The other defendant present at the murder was found not guilty by a jury. United States v. Yancy, No. 5:95-cr-70074 (W.D. Va. Dec. 8, 1997). This factor does not weigh either in favor or against reducing Waller's sentence.

The court finds that factors discussed above, when considered along with the fact that if Waller were sentenced today his guidelines range would still be 360 months to life, support the conclusion that, under the sentencing package doctrine, Waller's original sentence of 320 months should remain at 320 months. The court believes that a sentence of 320 months is consistent with the policy and concerns addressed by the First Step Act and is sufficient, but not greater than necessary, to meet the sentencing goals of punishment, deterrence, protection of the public, and rehabilitation undergirding 18 U.S.C. § 3553(a).

## IV. Compassionate Release

Waller also seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The government did not address Waller's motion for compassionate release in its response to his request for relief. Nevertheless, for the reasons stated below, the court **DENIES** Waller's request for relief.

Waller seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his susceptibility to severe illness from COVID-19 puts him at increased risk of severe COVID-

19 illness or death. Waller alleges that he is obese with a BMI of 35.7 and has asthma, and that these conditions place him at an increased risk of severe illness from COVID-19. Mot., ECF No. 391 at 13-14.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Waller's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to bring motions under § 3582(c) was added by the First Step Act to "increas[e] the use and

transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before bringing a motion in the district court, a petitioner must first exhaust his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" Id.; see United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020).

Here, Waller does not state that he has exhausted his administrative remedies, but the government did not raise the issue of exhaustion. The Fourth Circuit has held that the requirement that a petitioner complete certain steps before filing his motion is a claim-processing rule, rather than jurisdictional. As such, it can be waived or forfeited. See United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). The government does not contest that Waller has exhausted his administrative remedies. Accordingly, the court finds that Waller has satisfied the statute's exhaustion requirements.

### B. Extraordinary and Compelling Circumstances

The court must next consider if it should reduce Waller's term of imprisonment based on 18 U.S.C. § 3582(c)(1)(A). The application notes to U.S.S.G. § 1B1.13 state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's

spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" than, or in combination with, those described in Application Notes (A)-(C). Id. at cmt. n. 1(A)-(D).

"In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing, e.g., United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)). To evaluate an inmate's particularized susceptibility, "the Court examines the Center[s] for Disease Control and Prevention's [CDC] list of risk factors for severe COVID-19 complications." Wilson v. United States, No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020). The CDC's guidance identifies underlying conditions that can place individuals at a higher risk of severe outcomes from COVID-19.[3]

Here, Waller is obese which "can make [him] more likely to get very sick from COVID-19."[4] The risk of severe illness from COVID-19 increases sharply with higher Body Mass Index. Id. He also has asthma, and moderate or severe asthma can make it more likely that a person can get very sick from COVID-19. Id. Waller submitted some medical records, but the records do not indicate the severity of his asthma. ECF No. 391-7 at 10. Waller, who has the burden of establishing that he is entitled to a sentence reduction, has not shown that his asthma

---

[3] Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 25, 2022) (last viewed April 12, 2022).
[4] Id.

17

is so severe that it puts him at increased risk. Nor has Waller indicated whether he was offered or has received a COVID-19 vaccine. Nevertheless, based on his obesity, the court assumes for purposes of this motion that Waller has particularized susceptibility to COVID-19.

However, Waller cannot meet the second prong of the test – that he has a particularized risk of contracting the disease at his prison facility. As of April 11, 2022, out of 135,935 inmates in BOP facilities, 13,190 inmates in community-based facilities, and 36,000 staff members, there are 70 federal inmates and 146 BOP staff members who have confirmed positive test results for COVID-19 nationwide. Currently, 53,151 inmates and 12,538 staff members have recovered from COVID-19.[5] Waller is incarcerated at USP Florence-High in Florence, Colorado. According to the CDC, there are zero active cases of COVID-19 among inmates and two cases among staff.[6] Based on these numbers, Waller cannot show that he is at particularized risk of contracting COVID-19. Accordingly, Waller has not demonstrated that there are "extraordinary and compelling reasons" reasons to warrant a sentence reduction under § 3582(c)(1)(A).

Moreover, even if Waller showed that there were extraordinary and compelling reasons making him eligible for a sentence reduction, for the same reasons discussed above, the § 3553(a) factors weigh against granting Waller a sentence below 320 months. Therefore, for all of these reasons, Waller's request for compassionate release is **DENIED**.

---

[5] https://www.bop.gov/coronavirus/ (last viewed Apr. 11, 2022).
[6] Id.

## CONCLUSION

The court finds that a sentence of 320 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law. Accordingly, the court **DENIES** Waller's motion under the First Step Act and **DENIES** his motion for compassionate release, ECF No. 391.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: April 12, 2022

Michael F. Urbanski
Chief United States District Judge